# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

NICOLE WIEDMEYER,

              Plaintiff,

     v.                                       Case No. 04-C-0576

SHAWANO COUNTY,
ROBERT A. SCHMIDT,
and TOMINA MARQUARDT

              Defendants.

---

## DECISION AND ORDER

Plaintiff Nicole Wiedmeyer brought this action under 42 U.S.C. § 1983 and Wis. Stat. § 302.38 against three defendants. One defendant, Tomina Marquardt, worked as a guard at the Shawano County Work Release Center in Shawano, Wisconsin, where the plaintiff was in custody. The other defendants are Shawano County and Robert A. Schmidt, the Sheriff of Shawano County. The plaintiff alleges that each of the defendants was deliberately indifferent to her serious medical needs and failed to provide reasonable and appropriate medical care when she suffered a placental abruption while in custody, resulting in the stillbirth of her baby. The defendants have moved for summary judgment. For the following reasons, their motion will be granted in part and denied in part.

## BACKGROUND

In considering defendants' motion for summary judgment, the court sets forth the facts in the light most favorable to plaintiff, the non-moving party. *Fisher v. Lovejoy*, 414 F.3d 659,

661(7th Cir. 2005). Plaintiff was incarcerated in the Shawano County Work Release Center ("WRC") beginning February 10, 2003. (Pl.'s Prop. Findings of Fact ¶ 18, hereinafter, "PPFOF".) At the time her incarceration began, plaintiff was over six months pregnant. (PPFOF ¶ 14.) Plaintiff's due date was May 15, 2003. (Defs.' Prop. Findings of Fact ¶ 12, hereinafter, "DPFOF".) Defendant Marquardt was aware that plaintiff was pregnant and that she was experiencing abdominal pains. (PPFOF ¶ 14; DPFOF ¶¶ 55-59.) On at least one occasion, Marquardt had prepared plaintiff to be driven to the hospital by plaintiff's mother. (DPFOF ¶¶ 55-59.)

During her incarceration plaintiff slept in the WRC's "dorm." The dorm was wired with an intercom allowing inmates to contact the correctional officer at the front desk. (PPFOF ¶¶ 11-12). The dorm also had video cameras and microphones that enabled this officer to see and hear what was happening in it. (PPFOF ¶¶ 6-9, 12.)

In the early morning hours of March 12, 2003, Plaintiff went to the bathroom because she felt nauseated and light-headed and she had pain in her stomach. (PPFOF ¶ 21.) After Plaintiff returned to her dorm, while still in pain, she spoke to Harley Messer, another inmate. (PPFOF ¶¶ 23-24.) According to Messer' account, which is disputed by the defendants, Messer pressed an intercom button at about 1:45 a.m. to alert the guards of Plaintiff's situation. (PPFOF ¶¶ 26.) Messer told Defendant Marquardt, who answered the call, that plaintiff was "having pains" and that "anything could be happening." (PPFOF ¶ 27.) Marquardt responded to Messer's intercom call by saying, "We'll take care of it." (PPFOF ¶ 28.)

Some time later, Messer pressed the intercom button a second time. (PPFOF ¶ 34; Def.'s Resp. PPFOF ¶ 34.) About an hour after the first call, Carrie Puzen, another inmate, used the intercom to make a third call for assistance. (PPFOF ¶ 43; Def's Resp. PPFOF ¶ 43.) Marquardt

2

arrived in the dorm to provide assistance at about 2:45 a.m. (PPFOF ¶ 46.) Plaintiff told Marquardt that she was experiencing stomach pain and hot flashes, and was light headed. (PPFOF ¶ 51.) After assessing the situation, at about 2:55 a.m., Marquardt called the Shawano Medical Center and spoke to a nurse in the obstetrics unit. (DPFOF ¶¶ 109-10.) Marquardt informed the nurse of plaintiff's symptoms. (DPFOF ¶ 109.) The nurse instructed Marquardt that plaintiff should go to the hospital to be checked out, but did not instruct Marquardt that plaintiff need to be transported by ambulance. (DPFOF ¶¶ 116-17.)

After the conversation with the nurse, Marquardt asked plaintiff if one of her relatives could transport her to the hospital. (PPFOF ¶ 76.) Plaintiff responded that her mother could take her to the hospital. (PPFOF ¶ 77.) Marquardt called plaintiff's mother to inform her that her daughter was experiencing abdominal pain and to ask her if she could take her daughter to the hospital. (DPFOF ¶¶ 131, 135.) Plaintiff's mother stated that she would be at the WRC by 3:30 a.m. (PPFOF ¶ 81.)

While waiting to be taken to the hospital, plaintiff was placed in a holding cell. (PPFOF ¶ 79.) The guards were able to observe plaintiff while she was in the holding cell. (DPFOF ¶ 142.) At about 3:10 a.m., plaintiff sat on the toilet in the holding cell and saw that she was bleeding. (DPFOF ¶ 145; PPFOF ¶ 85.) Five minutes later, plaintiff told Marquardt that she was bleeding. (DPFOF ¶ 146.) Marquardt gave plaintiff a sanitary napkin. (*Id.*) At about 3:18 a.m., plaintiff was removed from the holding cell. (DPFOF ¶ 149.) Plaintiff's mother arrived at the WRC and plaintiff left with her mother at about 3:20 a.m. (DPFOF ¶ 155.) Plaintiff was admitted to the hospital at approximately 3:26 a.m. (DPFOF ¶ 158.)

Once at the hospital, plaintiff was brought to the Ob-Gyn department where a nurse observed that she was in great distress. (PPFOF ¶ 119.) Plaintiff was first assessed by a doctor at 3:50 a.m.

3

(DPFOF ¶ 160.) The doctor ordered an immediate cesarean section. (PPFOF ¶ 125.) The cesarean section procedure started at 4:30 a.m. (DPFOF ¶ 161.) Plaintiff's baby was stillborn at 4:35 a.m. (DPFOF ¶ 162.)

Plaintiff commenced this action on June 15, 2004. (Compl.) On July 29, 2005, the defendants filed their motion for summary judgment. (Defs.' Mot. for Summ. J.)

## ANALYSIS

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Id.* at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend each element of the cause of action, showing that there is a genuine issue for trial. *Id.* at 322-24.

In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion, however; there must be a *genuine* issue of *material* fact for the case to survive. *Id.* at 247-48.

"Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). Failure to support any essential element of a claim renders all other facts immaterial. *Celotex*, 477 U.S. at 323. Therefore,

4

summary judgment is appropriate against a party who, after adequate time for discovery and in the face of a properly supported summary judgment motion, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322.

Whether a material issue of fact is "genuine" necessarily requires some qualitative determination of sufficiency of the evidence. To defeat a properly supported motion for summary judgment, the opposing party must present specific and sufficient evidence that, if believed by a jury, would actually support a verdict in its favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249. A "metaphysical doubt as to the material facts" is insufficient to defeat a motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 587. "A district judge faced with [a summary judgment] motion must decide . . . whether the state of the evidence is such that, if the case were tried tomorrow, the plaintiff would have a fair chance of obtaining a verdict. If not, the motion should be granted and the case dismissed." *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572-73 (7th Cir. 1989) (citations omitted).

In addition to the foregoing principles, a party moving for summary judgment or responding thereto must comply with the local rules of the district in which the motion is brought. *Koszola v. Bd. of Ed. of City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004). In this district, Civil L.R. 56.2 sets forth additional summary judgment procedures that parties are required to follow. This rule requires that the party moving for summary judgment submit either a stipulation of facts, or "the

5

movant's proposed findings of fact supported by specific citations to evidentiary materials in the record," or a combination of the two. Civil L.R. 56.2(a). The opposing party must file "a specific response to the movant's proposed findings of fact, clearly delineating only those findings to which it is asserted that a genuine issue of material fact exists." Civil L.R. 56.2 (b)(1). The rule further provides that "[i]n deciding a motion for summary judgment, the Court must conclude that there is no genuine issue of material issue as to any proposed finding of fact to which no response is set out." Civil L.R. 56.2(e).

## 1. Section 1983 Claims

### a. Claims against Robert A. Schmidt and Shawano County

The plaintiff's complaint is unclear as to whether Defendant Schmidt is being sued in a personal or official capacity. In the plaintiff's brief in response to summary judgment motion, the plaintiff concedes that Schmidt is being sued in an official capacity. (Pl.'s Resp. To Defs.' Summ. J. Mot. 9.) A lawsuit against an official in his official capacity "generally represent[s] only another way of pleading an action against an entity of which [he] is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n.55 (1978). Therefore, analysis is the same for plaintiff's claims against Schmidt and Shawano County.

A municipality is considered to be a "person" within the meaning of 42 U.S.C. § 1983. *Monell*, 436 U.S. at 690; *Baxter v. Vigo County School Corp.*, 26 F.3d 728, 734 (7th Cir. 1994). A municipality is liable under § 1983 when one of its policies or customs deprives the plaintiff of her constitutional rights. *Monell*, 436 U.S. at 694; *Baxter*, 26 F.3d at 734. A municipality is not liable under § 1983 under the theory of *respondeat superior*. *Monell*, 436 U.S. at 691; *Baxter*, 26 F.3d at 734. "Proof of a single incident of unconstitutional activity is not sufficient to impose

6

liability under *Monell* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985).

A plaintiff has three means of establishing municipal liability under *Monell*: (1) the plaintiff may establish the existence of "an express [municipal] policy that, when enforced, causes a constitutional deprivation;" (2) the plaintiff may prove "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law" that causes a constitutional violation, or (3) the plaintiff may show that "the constitutional injury was caused by a person with final policymaking authority." *Roach v. City of Evansville*, 111 F.3d 544, 548 (7th Cir. 1997) (quoting *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995)).

The plaintiff does not contend that her injury was caused by a widespread practice that was not authorized by an express municipal policy. The plaintiff also does not contend that her injury was caused by a policymaker. Therefore, the plaintiff must establish that the enforcement of an express municipal policy caused her injury.

The plaintiff alleges that there was a policy in effect on March 12, 2003, that encouraged inmates to find their own rides to the hospital. (Pl.'s Resp. at 10.) She submits the following excerpt from the "Shawano County Work Release Center: Inmate Rules, Regulations and Information Packet":

> **Medical Emergency:** Should you become ill or injured during your incarceration and require medical attention, alert a staff member immediately. You will be referred to the Shawano Clinic or the Shawano Medical Center. Depending on the severity of your illness or injury you may be required to provide your own transportation to these facilities. If after consultation with medical authorities, it is

determined that immediate transport is necessary, correctional staff will arrange for transportation, however, you may still be held financially responsible for services and transportation.

(PPFOF ¶ 146.)  The plain language of the "Inmate Rules" does not indicate a preference for prisoners finding their own transportation rather than emergency transportation in an urgent situation.  Rather, the paragraph simply states that the prisoner *may* have to provide her own transportation depending on the severity of the illness or injury.  There is no express municipal policy discouraging or forbidding the use of emergency transportation in circumstances where it is required.  As such, the plaintiff cannot establish that the enforcement of an express municipal policy caused the constitutional deprivation.  Defendants Schmidt and Shawano County are therefore entitled to summary judgment on plaintiff's § 1983 claims.

### b. Claim against Tomina Marquardt

Plaintiff's claim against Defendant Marquardt is for deliberate indifference to plaintiff's serious medical needs, which is a particular subset of those forms of cruel and unusual punishment prohibited by the Eighth Amendment.  The plaintiff in such a case must demonstrate two things.  First, "that her condition was serious," which is an objective standard.  *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 590 (7th Cir. 1999).  A condition is serious if "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain."  *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).  Second, the plaintiff must show that the defendant acted with a "deliberately indifferent" state of mind, which is a subjective standard.  That is, state officials are deliberately indifferent if they know of and disregard "an excessive risk to inmate health or safety;" they must both be "aware of facts from which the

8

inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Dunigan*, 165 F.3d at 591 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Marquardt does not contest that the seriousness of the plaintiff's medical needs. (Defs.' Reply at 1.) Therefore, the only issue that needs to be addressed is Marquardt's mental state. Plaintiff offers no direct evidence tending to show Marquardt's state of mind. Therefore, I look to the circumstantial evidence offered by the plaintiff to show Marquardt's state of mind. *Farmer*, 511 U.S. at 842; *James v. Milwaukee County*, 956 F.2d 696, 700 (7th Cir. 1992).

Plaintiff makes two arguments concerning Marquardt's deliberate indifference to plaintiff's serious medical needs. First, plaintiff argues that Marquardt's indifference can be inferred from the one-hour delay in providing medical care. Second, plaintiff argues that Marquardt's indifference can be inferred from her requiring plaintiff to obtain her own transportation rather than calling for an ambulance.

Marquardt denies that she waited an hour before providing any medical care to the plaintiff. She also disputes plaintiff's characterization of her communications with plaintiff and the other inmates. These disputes are for the jury to resolve, and absent their resolution the court cannot grant Marquardt's motion for summary judgment. If Marquardt waited an hour after being notified that plaintiff was in pain before doing anything–even something as simple as speaking to plaintiff to determine what was wrong with her–a jury could infer that Marquardt was deliberately indifferent to plaintiff's serious medical needs. This delay, combined with the failure to call an ambulance in the face of what plaintiff and other inmates suggest was a clear emergency, could have resulted in the delay plaintiff's expert claims would have contributed to the loss of her baby. At least the court is unable to rule against plaintiff as a matter of law on the record as it now stands. Accordingly, the

9

court will deny Marquardt's motion for summary judgment with respect to plaintiff's § 1983 claim against Marquardt.

**2. Wis. Stat. § 302.38 Claim**

Plaintiff also claims that the defendants failed to provide reasonable and appropriate medical care under the circumstances as required by Wis. Stat. § 302.38. Wis. Stat. § 302.38(1) provides as follows:

> If a prisoner needs medical or hospital care . . . the sheriff, superintendent or other keeper of the jail or house of correction *shall* provide appropriate care or treatment and *may* transfer the prisoner to a hospital . . . .

Wis. Stat. § 302.38(1) (emphasis added)

Under this statute, the sheriff is required to provide appropriate medical care and treatment to a prisoner when it is needed. It is not clear, however, that this provision creates a private right of action on behalf of a prisoner for damages resulting from the sheriff's failure to provide such care. "[A] private right of action is only created when (1) the language or the form of the statute evinces the legislature's intent to create a private right of action, and (2) the statute establishes private civil liability rather than merely providing for protection of the public." *Grube v. Daun*, 563 N.W.2d 523, 527 (Wis. 1997). *See, e.g., Farr v. Alternative Living Services, Inc.*, 643 N.W.2d 841 846-47 (Wis. App. 2002) (holding that resident of community-based residential facility (CBRF) did not have a private cause of action for alleged violations of statutes and regulations applicable to CBRFs or care and service residential facilities).

But defendants have not challenged plaintiff's claim under § 302.38 on that basis. Instead, they argue that plaintiff was afforded appropriate medical care on the date in question or,

10

alternatively, that the County and its employees are immune from liability for Plaintiff's damages under Wis. Stat. § 893.80 because the acts taken by them were discretionary.[1]

It is true that the sheriff has discretion as to how to provide the medical care. *Swatek v. County of Dane*, 531 N.W.2d 45, 50 (Wis. 1995). The discretion is necessary because the medical needs of the prisoners will vary. *Id.* Defendants are entitled to immunity for negligence in their discretionary actions. Wis. Stat. 893.80(4); *Kierstyn v. Racine Unified Sch. Dist.*, 596 N.W.2d 417, 421 (Wis. 1999). However, defendants may not claim immunity if they failed to act in the face of "a known, present danger of such force that the time, mode, and occasion for performance is evident with such certainty that nothing remains for the exercise of judgment." *Lodl v. Progressive Northern Ins. Co.*, 646 N.W.2d 314, 324 (Wis. 2002) (quoting *C.L. v. Olson*, 422 N.W.2d 614, 620 (1988)). The determination of whether or not defendants are entitled to immunity is a matter of law. *Id.* at 319.

Defendants argue that, even in the event that they violated Wis. Stat. § 302.38(1), they are entitled to immunity because their actions with respect to plaintiff on the night in question involved the exercise of discretion. Plaintiff argues that defendants failed to act in the face of a known, present danger where no judgment was needed. The court concludes, as it did with respect to plaintiff's § 1983 claim, that it must await the jury's determination as to whether Defendant Marquardt delayed her response to plaintiff's medical need to determine whether Marquardt did nothing in the face of a known, present danger. Accordingly, defendants' motion for summary judgment on plaintiff's state law claim is denied.

---

[1]Defendants also argued in their opening brief in support of their motion for summary judgment that Plaintiff's claim under state law was barred because the suit was not timely under § 893.80(1). They have since abandoned that argument.

11

## CONCLUSION

Plaintiff's § 1983 claims against Defendants Schmidt and Shawano County fail as a matter of law, and summary judgment will be granted as to those claims. Defendants' motion will otherwise be denied.

**IT IS THEREFORE ORDERED** that defendants' motion for summary judgement is **GRANTED** with respect to plaintiff's § 1983 claims against Defendants Robert A. Schmidt and Shawano County. Defendants' motion is otherwise **DENIED.** The clerk shall set this matter on the court's calendar for a Rule 16 telephone conference for further scheduling.

Dated this 30th day of November, 2005.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
